IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RECEIVED

DEC 21 2023

CLERK, U.S. DISTRICT COURT
FOR THE WESTERN DISTRICT
OF PENNSYLVANIA

THOMAS KUZNICKI

    Plaintiff,

v.

NATIONAL CHURCH RESIDENCES OF

PENN HILLS, PA

    Defendant

Comes now, Thomas Kuznicki, who requests that this Court find that National Church Residences of Penn Hills Pa steadfastly refused to follow HUD Fair Housing rules and regulations. I have been harassed and faced spiteful discrimination from tenants, managers, and an attorney.

Filed on behalf of the Plaintiff by: _____

Thomas Kuznicki

6560 Leechburg Road

Verona, PA 15147

412-654-5423

Pro Se

1

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JURISDICTION

I, Thomas Kuznicki live in Beechtree Commons II, a rental community for seniors age 62 and older. Residents sign a 202 PRAC lease. The federal government provided direct loans and capital advances to support nonprofit entities to build housing for very low-income elderly, it is watched over by Housing and Urban Development, HUD.

The United States District Court for the Wester District of Pennsylvania has jurisdiction over this Complaint pursuant to 28 U.S.C. 158 (d).

Sec. 804 [42 USC 3604] and [42 USC 3617], 24 CFR § 100.65 (a), (b) 2, 4, 6, 7, 24 CFR § 100.6 (a)(2).

ISSUES

HUD joined with Fair Housing and Title VIII of the Act is also known as the Fair Housing Act protects people from discrimination. The Fair Housing Act makes it illegal to discriminate against persons because of race, color, religion, sex (including gender identity and sexual orientation), disability, familial status, or national origin. The managers and a few tenants are making this rental property a Hostile Living Environment.

There is an ongoing issue with Ishtar Crum. I am being portrayed and characterized as being psychotic. This is discrimination and making it a Hostile Environment.

I have been considered mentally and physical disabled for more than 20 years. Federal nondiscrimination laws define a person with a disability to

2

include any (1) individual with a physical or mental impairment that substantially limits one or more major life activities; (2) individual with a record of such impairment; or (3) individual who is regarded as having such an impairment.

COUNT 1 – 3 Discriminating Lease Violations dated 3/15/2023 (See exhibit 2)

On 3/5/2023 the maintenance tech was at my apartment to repair the kitchen sink faucet. He shut of the water valves in the hall ceiling outside of my apartment. Those pipes did not go to the kitchen, they went to my bathroom. The water pipes for the kitchen came from the maintenance room next to my kitchen. The maintenance tech did **not** reset the water flow to my bathroom.

I left my unit while the tech did the faucet repair. When I returned to my apartment, I attempted to take a shower. I could not because the water pressure was too high to safely take a shower. The water pressure cannot be set by the shower valve installed (See exhibit 7). My left arm is damaged from a fall at work 25 years ago (see exhibit 1) and because of the high-water pressure I cannot hold a bar of soap and wash at the same time. The maintenance tech never reset the water pressure to the bathroom.

I called the maintenance line in Ohio to put in a work order to have the water pressure reset for the bathroom. I then removed a ceiling tile to put in front of the maintenance door in case the maintenance tech would pass by. That is when Ishtar Crum said: "Get off the ladder, now."

Ishtar Crumb's version of what happened is contradicted by the video (See exhibit 14 – memory stick).

3/15/2023 – *You were using a ladder to access the water shut off in the hall ceiling. You were turning the valve so low and/or completely off. Not only did your apartment have little or no water, this action effected the residences/units above you on the 2nd and 3rd floors. The police were called because you were argumentative with staff and would not leave the water lines in the hallway alone. Police came to the property – you continued to be argumentative and non-compliant. Officers witnessed you climbing up tour ladder to turn off the water to your unit as well as units above yours. Your actions resulted in a citation issued by the police* (See exhibit 2A).

3/15/2023 – *Your conduct (shouting and turning the water off to apartments) interfered with the ability for management to maintain a pleasant, safe and comfortable environment for the residents. Your behavior also disrupted the quiet and peaceful enjoyment of the residence* (See exhibit 2B).

3/15/2023 – *Maintenance was unable to complete a repair because of your interference. You were argumentative with maintenance and property manager. Maintenance discovered that the water lines in the ceiling were turned down extremely low. When maintenance turned the water to the on position you immediately got a ladder from your apartment, climbed up and turned the water back down. After a few attempts and asking you not to touch the shut offs in the ceiling you turned the water completely off. After witnessing the Argumentativeness, disrespect and refusal to stop turning the water off in the hallway ceiling, management had to call law enforcement* (See exhibit 2C).

Issues from the video (See exhibit 14 – memory stick):

1. This is an ongoing issue with Ishtar Crum. I am being portrayed and characterized as being psychotic. This is discrimination.

4

2. Ishtar called the police from the vicinity of the office which is 110 feet away from where my ladder and the shut off valve was in the ceiling. Ishtar Crum could not see what I was doing. Never speaking to me before she called the police (See exhibit 4, 5).
3. The maintenance tech was standing next to me.
4. I asked Ishtar and the maintenance tech to go into the bathroom and see the high-water pressure. They refused.
5. I pulled Ishtar's words from the lease violations (See exhibit 6, 7). The words are a far cry from what the video shows.
6. The discrimination is a direct result of a disability. My arm damage plus the difficulty I have standing from a back operation, makes it dangerous for falls in the shower. Ishtar refused to look at the shower and refused to talk to me about it. And called the police which aggravated a mental disability. It is discrimination to ignore my difficulty using the shower with high water pressure.
7. I was not given a copy of the video until 2 weeks after the hearing (See exhibit 15).

    Exhibit 15 is: Section 3: Termination of Tenancy by Owners; 8-13 B – Procedures for Terminating Tenancy and Providing Notice – 2 Termination Notice – c. (2) <u>State the reasons for the action with enough detail to enable the tenant to prepare a defense</u>;

    It is a violation of HUD rules not to give me a copy of the video.
8. This incident is in violation of Sec. 804 [42 U.S.C. 3604] and [42 U.S.C. 3617], 24 CFR § 100.65 (a), (b) 2, 4, 6, 7, CFR § 100.6 (a)(2), PA Title 18 § 4906. – False reports to law enforcement authorities.

I am requesting from this court Compensatory Damages and because of a disability, Punitive Damages. I am requesting the amount to be as much as the law allows.

I am requesting this court reinstate possession of Apartment 112 to Thomas Kuznicki

I am requesting that any monetary damages not be used for income for a lease for possession of the unit 112.

I am requesting that this Court use: § 100.7 - Liability for discriminatory housing practices. (2) For purposes of determining liability under paragraphs (a)(1)(ii) and (iii) of this section, prompt action to correct and end the discriminatory housing practice may not include any action that penalizes or harms the aggrieved person, such as eviction of the aggrieved person.

COUNT 2 – 3 Discriminating Lease Violations dated 1/25/2023

On January 25, 2023 I went to the third-floor laundry room to wash some clothes around 7:45 am. No tenant was there so I used three washers to wash my clothes. I started the machines and returned to my apartment.

When I returned to the laundry room, there was 6 minutes left to wash. A tenant, Florence Washington, was in a chair outside the laundry room. Ms. Washington has called the police on me for no reason and is friends with 2 tenants that attacked me at the front entrance of the building. I walked by Ms. Johnson and sat on a bench 35 feet away next to the elevator (See exhibit 8).

When I saw that my clothes were ready to be dried, I stayed by the elevator because Ms. Johnson had moved to the entry of the laundry room.

She started mumbling something that I could not understand. She went in the laundry room and started to open one of the doors of a washer that contained my clothes.

Ms. Johnson once banged on my door at 6 am. A few minutes later a police officer was at my door. Later in the day I received a Lease Violation from the building manager. I did not get a chance to rebut whatever Ms. Johnson said.

Another tenant entered the laundry area, Sharon. She told me to get my clothes out of the washing machines. I said that I would not until Ms. Johnson was away from the laundry room. When Ms. Johnson moved away from the laundry room, I moved my clothes to the dryer. I stayed with my clothes to protect them.

A short time later the building manager Ishtar Crum showed up and never asked me what happened.

A short time later 3 police officers showed up (See exhibit 6 – Police report of Florance Johnson's statement). A short time after that I received 3 Lease Violations (See exhibit 9). I separated Ishtar Crum's statements of what events from the Lease Violations (See exhibit 10). My left arm is damaged from a fall at work 23 years ago (see exhibit 1). I had my back twisted and a fall at work 25 years ago and Social Security found me to be physically disabled in 2004 (See exhibit 11). I could not physically do or want to do what Ishtar Crum stated I did.

I separated what Ishtar Crum said about the incident from the 3 Lease Violations. A quick look shows there is nothing included of my side of the incident. When compared to what Ms. Johnson said for the police report (See exhibit 12), it seems Ishtar Crum fabricated most of what is on the Lease Violation.

7

Ishtar Crumb's version of what happened is contradicted by the police report of Florence Johnson (See exhibit 6). Ms. Johnson's only complaint was that we were arguing.

*1/25/2023 – You refused to let residents in the laundry room. Management asked you to leave the door open to the laundry room. You stated: "I don't want her in here." Management said laundry room is for all residents you have to allow other residents in here. You said you were not leaving until your laundry was finished. Management stated you can't sit on the machines and keep other residents out, you said you were not leaving. Management stated: "I am going to take a picture of you." At that time: You kicked the laundry basket towards me and a resident with your foot. At that time management left the laundry room and waited for the police to arrive.*

*1/25/2023 – 911 was called after you not only took a resident's change purse with keys attached and threatened to throw the purse out the window, you refused to let this resident in the laundry room. A resident witnessed you shut the door on the resident, trapping her between the door and the door frame. You had your foot on the base of the door so that she could not open the laundry room door.*

I was injured at work more than 25 years ago. I had a back operation and there are still residual physical issues. One of them is I cannot raise my body up on my toes. I would not even think of putting my "foot on the base of the door" (See exhibit 11, Notice of Award, date you became disabled letter from the SSA). I returned to work after the operation and because of the weakness in my legs, I fell through a hole in the scaffold and slammed my arm on a safety rail (See exhibit 1, photo of my damaged arm), I have very little use of the arm and my hand, there is constant pain. I would not even think of doing what Ishtar Crum stated, especially to an elderly female.

8

This is an ongoing issue with Ishtar Crum. I am being portrayed and characterized as being psychotic. This is discrimination and making it a Hostile Environment.

This incident is in violation of Sec. 804 [42 U.S.C. 3604] and [42 U.S.C. 3617], 24 CFR § 100.65 (a), (b) 2, 4, 6, 7, CFR § 100.6(a)(2) hostile environment harassment.

I am requesting from this court Compensatory Damages and because of a disability, Punitive Damages. I am requesting the amount to be as much as the law allows.

I am requesting this court reinstate possession of Apartment 112 to Thomas Kuznicki

I am requesting that any monetary damages not be used for income for a lease for possession of the unit 112.

I am requesting that this Court use: § 100.7 - Liability for discriminatory housing practices. (2) For purposes of determining liability under paragraphs (a)(1)(ii) and (iii) of this section, prompt action to correct and end the discriminatory housing practice may not include any action that penalizes or harms the aggrieved person, such as eviction of the aggrieved person.

COUNT 3 – Refusing to have the criminal charges dismissed from COUNT 1

The video and Ishtar Crum's version are on totally different poles. Someone from National Church Residences should have deduced that and had the criminal charges dismissed.

9

I had the hearing delayed once. I have been treated by mental health doctors for 20 years. It is a disability. The false charge affects me in everything I do, including defending myself against the false charges (See exhibit 13).

This incident is in violation of Sec 804 [42 U.S.C. 3617], [42 U.S.C. 3604], 24 CFR § 100.65 (a), (b) 2, 4, 6, 7, CFR § 100.6(a)(2) hostile environment harassment.

I am requesting from this court Compensatory Damages and because of a disability, Punitive Damages. I am requesting the amount to be as much as the law allows.

I am requesting this court reinstate possession of Apartment 112 to Thomas Kuznicki

I am requesting that any monetary damages not be used for income for a lease for possession of the unit.

COUNT 4 – Lease violation dated 7/21/2022

*On 7/21/2022 you were yelling and shaking your cane at the property manager at Beechtree Commons. You do not live at this property. The police were called because of your actions.* (See exhibit 16)

On 7/21/2022 I walked to Beechtree Commons I to ask the building manager Ishtar Crum for some documents. I live in Beechtree Commons II and Ishtar Crum is only here for 2 days a week.

I went into Ishtar Crum's office and asked for some documents and set a request on her desk. I returned to Beechtree II and a short while later the police were knocking on my door. The police told me that the next time I was around Ishtar Crum, I should video tape her.

A week later I received a Lease Violation which stated that I was yelling and shaking my cane at Ishtar Crum. I did not yell or shake my cane at Ishtar Crum.

There are security cameras in the lobby. Where is the film of the incident? If the police were called there should be a proper report.

This is an ongoing issue with Ishtar Crum. I am being portrayed and characterized as being psychotic. This is discrimination and making it a Hostile Environment. I was only there for two minutes.

This incident is in violation of Sec 804 [42 U.S.C. 3617], [42 U.S.C. 3604], 24 CFR § 100.65, (a), (b) 2, 4, 6, 7, CFR § 100.6(a)(2) hostile environment harassment.

I am requesting from this court Compensatory Damages and because of a disability, Punitive Damages. I am requesting the amount to be as much as the law allows.

COUNT 5 – Lease violation dated 7/21/2022

*On 7/26/2022 you entered Beechtree Commons. There is no reason for you to be at Beechtree Commons. You were yelling at the staff and banging your cane on the office door.*

Ishtar Crum has the dates mixed up with this lease violation and the next lease violation.

I was not yelling and banging my cane on the office door.

I had not received the Lease Violation from 7/21 yet.

11

On 7/22/2022 I went to Beechtree Commons to ask Ishtar Crum for some documents. I thought the police coming to my door was some kind of mistake.

There are security cameras in the lobby. Where is the film of the incident?

This is an ongoing issue with Ishtar Crum. I am being portrayed and characterized as being psychotic. This is discrimination and making it a Hostile Environment.

**This incident is in violation of Sec 804 [42 U.S.C. 3617], [42 U.S.C. 3604], 24 CFR § 100.65(a), (b) 2, 4, 6, 7, CFR § 100.6(a)(2) hostile environment harassment.**

I am requesting from this court Compensatory Damages and because of a disability, Punitive Damages. I am requesting the amount to be as much as the law allows.

### COUNT 6 – Lease violation dated 7/21/2022

*On 7/22/2022 you entered Beechtree Commons. You do not reside at that property. The police were called because of your actions. After having a confrontation with the officers, you were told to leave Beechtree Commons (See exhibit 17).*

On 7/26/2022 I went to Beechtree Commons to ask Ishtar Crum for some documents. I sat on a bench in the lobby until I could see Ms. Crum. The police showed up and went directly to me. They asked me to leave the building. I was just sitting on a bench in the lobby, quietly.

Ishtar Crum has the dates mixed up with this lease violation and the previous lease violation. After the police were called, I have never been returned to Beechtree Commons I.

There are security cameras in the lobby. If the police were called, the "actions" should be stated. What actions? How can I defend myself?

This is an ongoing issue with Ishtar Crum. I am being portrayed and characterized as being psychotic. This is discrimination and a Hostile Environment.

This incident is in violation of Sec 804 [42 U.S.C. 3617], [42 U.S.C. 3604], 24 CFR § 100.65 (a), (b) 2, 4, 6, 7, CFR § 100.6(a)(2) hostile environment harassment.

I am requesting from this court Compensatory Damages and because of a disability, Punitive Damages. I am requesting the amount to be as much as the law allows.

### COUNT 7 – Lease violation dated 8/2/2022

*August 2, 2022, Maintenance was working in the building. Resident confronted maintenance asking questions about cameras and a prior confrontation between the resident and police at another building. Resident was argumentative, swearing, and being disrespectful to staff. Resident is in violation of house rules for business relationship.*

My apartment is next to the Maintenance office and storage. I see and talk to Bill almost every day. We exchange small talk. There was never anything said that was confrontational, by either of us. There was a day that I asked Bill about cameras in the lobby at Beechtree Commons I. This was after Ishtar Crum wrote that I was banned from Beechtree Commons I and

13

my phone number was blocked. I was doing due diligence asking Bill about the cameras. *Resident was argumentative, swearing, and being disrespectful to staff.* Bill is quite large, I was never argumentative, swearing, and being disrespectful to Bill.

This is an ongoing issue with Ishtar Crum. I am being portrayed and characterized as being psychotic. This is discrimination and making it a Hostile Environment.

This incident is in violation of Sec 804 [42 U.S.C. 3617], [42 U.S.C. 3604], 24 CFR § 100.65(a), (b) 2, 4, 6, 7, CFR § 100.6(a)(2) hostile environment harassment.

I am requesting from this court Compensatory Damages and because of a disability, Punitive Damages. I am requesting the amount to be as much as the law allows.

### Discrimination by Attorney Justin Tuskan

On page 5 of Complaint in Ejectment part (a) it states: Barricaded another resident of the Complex in that resident's apartment by taping at least two shopping carts to the front door of said resident's apartment, thereby impeding ingress and egress.

by taping at least two shopping carts.    How many carts? What type of carts?

In the NOTICE OF TERMINATION OF TENANCY AND NOTICE TO QUIT it states: Most recently, on or about December 1, 2021, you attempted to barricade a fellow resident in his apartment with a laundry cart and duct tape while threatening to physically assault him if he attempted to leave.

There are two vastly different sizes of carts, shopping cart or laundry cart. And "threatening to physically assault him if he attempted to leave" is not in the Complaint in Ejectment.

On page 5 of Complaint in Ejectment part (e) it states: "Followed residents around the halls of the Complex while taunting them with a large wooden walking stick." Attorney Tuskan uses the plural 's' to state this happened multiple times to multiple people. Attorney Tuskan is portraying me as being psychotic. Where are the Lease Violations? (See exhibits 19A and 19B)

What Mr. Tuskan is portraying me as is an ongoing issue with Ishtar Crum. I am being portrayed and characterized as being psychotic. This is discrimination and making it a Hostile Environment (See exhibit 19A and 19B).

This incident is in violation of Sec 804 [42 U.S.C. 3617], [42 U.S.C. 3604], 24 CFR § 100.65(a), (b) 2, 4, 6, 7, CFR § 100.6(a)(2) hostile environment harassment.

I am requesting from this court Compensatory Damages and because of a disability, Punitive Damages. I am requesting the amount to be as much as the law allows.

I swear the above is true and correct

*Thomas Kuznicki*

Thomas Kuznicki
Pro Se

Certificate of Service

A copy of this complaint will be served to the manager of Beechtree Commons II, National Church Residences of Penn Hills, PA